# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELLE LONG, | No. 4:15-cv-02404 |
| Plaintiff, | (Judge Brann) |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | |

# MEMORANDUM OPINION

**MARCH 7, 2018**

## I.  BACKGROUND

On November 23, 2015, Plaintiff, Danielle Long, hereinafter "Ms. Long," filed a two-count amended complaint against Defendant State Farm Mutual Automobile Insurance Company, hereinafter "State Farm," for not covering an underinsured motorist, hereinafter "UIM," claim. Count One alleges Breach of Contract; Count Two asserts Bad Faith.

State Farm filed a motion for partial summary judgment on the bad faith claim. Both parties briefed the issue; consequently, the motion is justiciable. State Farm's partial motion for summary judgment is granted for the ensuing reasons.

## II. DISCUSSION

### A. Standard of Review

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2] Fed. R. Civ. P. 56(a).

[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[4] *Clark*, 9 F.3d at 326.

[5] *Id*.

proof that would apply at the trial on the merits."⁶ Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."⁷ "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."⁸ "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"⁹

The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery. "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party."¹⁰

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

---

⁶ *Liberty Lobby, Inc.*, 477 U.S. at 252.

⁷ *Id.*

⁸ *Id.*

⁹ *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

¹⁰ *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).

on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[11]  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[12]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would

---

[11]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

[12]  *Id.*

[13]  *Liberty Lobby*, 477 U.S. at 250.

[14]  Fed. R. Civ. P. 56(c)(1).

contradict the facts identified by the movant.'"[15] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[16] On motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[17]

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[18] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[19] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[20]

### B. Undisputed Facts

On September 16, 2011, in State College, Centre County, Pennsylvania, Ms. Long was driving an automobile owned by her boyfriend's step-father.[21] Ms. Long

---

[15] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

[16] Fed. R. Civ. P. 56(e)(2).

[17] Fed. R. Civ. P. 56(c)(3).

[18] *Liberty Lobby*, 477 U.S. at 249.

[19] *Id*.

[20] *Id*. at 249–50 (internal citations omitted).

[21] ECF No. 54 at ¶ 1, 2 and 4.

proceeded through an intermittently flashing red stoplight[22] when her vehicle collided with a vehicle that had driven through a periodically flashing yellow light. Ms. Long was cited for having violated subsection (1) of 75 Pa.C.S.A. § 3114(a), as follows:

> General rule.--Whenever a flashing red or yellow signal is used in a traffic signal or with a traffic sign it shall require obedience by vehicular traffic as follows: (1) Flashing red.--When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop in the same manner as at a stop sign, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign as provided in section 3323 (relating to stop signs and yield signs).[23]

The driver of the other vehicle was not charged with any offense.

The Court has reviewed the Commonwealth of Pennsylvania police crash reporting form attached by State Farm as an exhibit to its motion for summary judgment. It speaks for itself.

Nearly two years after the accident, Ms. Long pursued a UIM claim with State Farm. State Farm rejected the claim after evaluating the following:

---

[22] Ms. Long asserts that she stopped at the light. The evidentiary documentation suggests the contrary. Either way, it is agreed that she had travelled past the red light at the point of collision.

[23] 75 Pa. Stat. and Cons. Stat. Ann. § 3114.

a. The facts of the accident provided by Mr. Miles;

   b. The facts of the accident provided by Ms. Long to the MPC representative;

   c. The police report which noted that Ms. Long had the flashing red light and that Ms. Long was cited for violating her duties at the traffic control signal;

   d. The police report which showed Ms. Long's vehicle to be in Mr. Hinds-Zaami's lane of travel at the point of impact;

   e. The photos showing the damage to the cars;

   f. Information reflecting that State Farm had paid for the damage to Mr. Hinds-Zaami's vehicle.

Ms. Long's counsel contested the denial of Ms. Long's UIM claim with State Farm. Consequently, on April 10, 2015, Ms. Long underwent an 'examination under oath' during which she testified that she had stopped at the blinking red light.[24]

### C. Analysis of Pennsylvania's Insurer Bad Faith law

A bad faith claim is brought annexed to a breach of contract claim against an insurer. It allows a plaintiff to castigate an insurer for its indefensible denial of the claim. Pennsylvania's bad faith statute permits a plaintiff to recover interest, punitive damages, court costs and attorney fees if the insurer has acted in bad faith in handling the plaintiff's claim.

---

[24] ECF No. 54 at ¶ 29.

Recently the Pennsylvania Supreme Court clarified the definition of 'bad faith.' In *Rancosky v. Washington Nat'l Ins. Co.*, addressing two matters of first impression. Justice Max Baer writing for that court held that first, to prevail on bad faith claim, insureds are required to show that insurer did not have reasonable basis for denying benefits and that insurer knew of or recklessly disregarded lack of reasonable basis; and second, that proof of insurer's motive of self-interest or ill-will was not prerequisite to prevailing on bad faith claim.[25] I quote Justice Baer, at length, in his explication of the law in this recent, and seminal, case:

> In order to answer the question presented in this appeal, an issue of first impression for this Court, we must interpret Pennsylvania's bad faith insurance statute at 42 Pa.C.S. § 8371, which provides, in full, as follows:
>
> > § 8371. Actions on insurance policies
> > In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.
> > 42 Pa.C.S. § 8371.
>
> *****
>
> [W]hen read in a vacuum, the plain language of Section 8371 provides little guidance in answering the discrete legal question raised herein, namely, the level of proof required to prevail in a bad faith claim. In enacting Section 8371, the General Assembly did not define "bad

---

[25] 170 A.3d 364 (Pa. 2017).

faith" or otherwise set forth the manner in which a party must prove liability. Therefore, in order to understand the meaning of "bad faith," and thus ascertain and effectuate the intent of the General Assembly in enacting Section 8371, we must utilize the additional tools of statutory construction outlined above. In particular, we look to the occasion and necessity for the statute and the circumstances of the statute's enactment. 1 Pa.C.S. § 1921(c).

*****

As noted, this Court has not had occasion to consider the precise contours of bad faith claims arising under Section 8371 since its enactment. Consequently, the Superior Court's 1994 decision in Terletsky has been the preeminent ruling on this issue. There, the Superior Court observed that in the insurance context, bad faith had acquired a particular meaning, citing the following definition from the 6th edition of Black's Law Dictionary:

> "Bad faith" on part of the insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest of or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990) (emphasis added)); see also 1 Pa.C.S. § 1903(a) (providing that words shall be construed in accordance with the peculiar and appropriate meaning they have acquired). Citing to *D'Ambrosio*, the Superior Court articulated the test for bad faith as follows: "to recover under a claim of bad faith, the plaintiff must show [1] that the defendant did not have a reasonable basis for denying benefits under the policy and [2] that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id. (citing, inter alia, D'Ambrosio*, 431 A.2d at 971).\

*****

For the reasons set forth above, we conclude that the Superior Court's longstanding two-pronged test, first articulated in *Terletsky*, presents an appropriate framework for analyzing bad faith claims under Section 8371. In particular, we conclude that the *Terletsky* test, and its imposition of a recklessness standard for liability under the second prong, comports with the historical development of bad faith in Pennsylvania and effectuates the intent of the General Assembly in enacting Section 8371.12 Accordingly, we hold that proof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371.

*****

In summary, we hold that, to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.[26]

At trial, Ms. Long would have to prove bad faith by 'clear and convincing evidence,' defined as follows:

> Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.[27]

---

[26] *Id.* at 370-78.

[27] Third Circuit Model Jury Instruction 1.11 (Last Updated October 2017) *citing Cruzan v. Missouri Dep't of Health,* 497 U.S. 261, 285 n.11 (1990), *see also Miezejewski v. Infinity Auto Ins. Co.,* 609 F. App'x 69 (3d Cir. 2015) (not precedential).

Applying the clear and convincing evidence standard to the two prong test the Pennsylvania Supreme Court set forth in *Terletsky* and recently re-enunciated in *Rancosky*, Ms. Long would have to evince a firm belief or conviction in the minds of the jurors that State Farm both (1) did not have a reasonable basis for denying her UIM benefits and (2) that State Farm knew or recklessly disregarded its lack of a reasonable basis in denying the UIM claim.

In considering the first prong of this analysis, I must examine what evidence State Farm considered in evaluating Ms. Long's UIM claim. Bad faith claims are by their very nature fact specific. Today, I need only review the first factor, as the facts, taken in the light most favorable to Ms. Long, do not support a bad faith claim against State Farm, let alone by clear and convincing evidence. State Farm <u>did</u> have a reasonable basis for denying Ms. Long's claim.

The State Farm examiner assessed the following in denying Ms. Long's UIM claim: the facts of the accident provided Ms. Long's boyfriend; the facts of the accident provided by Ms. Long; the police report and Ms. Long's attendant traffic citation; the police report's visual depiction of Ms. Long's vehicle in the other vehicle's lane of travel at the point of impact; photos showing damage to the cars; and the fact that State Farm had paid for the damage to the other vehicle.[28]

---

[28] ECF No. 54 at ¶ 29.

The police report, written immediately after the accident, states that the driver Ms. Long collided with conveyed to the investigating officer that Ms. Long did not stop for the flashing red light. It also indicates that Ms. Long made no comment about whether or not she stopped at the flashing red light. I note the following from the police crash reporting form:

> ..Ofc then spoke with operator #2. He stated he was travleing west on Benner Pike and was facing a flashing yellow light. Operator #2 stated unit #1 did not stop at the flashing red signal and.he struck unit #1 in the driver side door.
>
> Operator #2 stated he had pain in his left knee and chest region. He later went to Mount Nittany Medical Center on his own for his injuries.
>
> Ofc then spoke with operator #1 at the hospital. She stated she was traveling on Shiloh Rd and saw unit #2 approaching her out of the corner of her eye. She then remembered unit #2 hitting her.driver side door. Operator #1 had complaints of pain in her chest, neck, head , legs and back area. [29]

The State Farm examiner also considered the fact that Ms. Long was charged with an infraction of 75 Pa.C.S.A. § 3114(a) (1) for failure to stop for a flashing red light. The examiner also devoted attention the photographs of the damaged vehicles and the police officer's depiction of Ms. Long's vehicle in the other vehicle's lane of travel, as follows:

---

[29] ECF No. 55-1 at 123.



[30]

The examiner also considered the fact that State Farm had previously determined it was responsible for the damage to the other vehicle.

Recently, the United States Court of Appels for the Third Circuit in *Miezejewski v. Infinity Auto Ins. Co* upheld a District Court's grant of summary judgment as to a bad faith claim, as follows:

> Here, the District Court correctly established the plaintiff's burden to demonstrate bad faith by clear and convincing evidence. This heightened standard, under which we must view the evidence presented, "requires evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[ ] acted in bad faith."

---

[30] ECF No. 55-1 at 124.

The facts, taken in the light most favorable to the Miezejewskis, do not support their claim, let alone by clear and convincing evidence.

Consistent with Infinity's "ongoing vital obligation," its claim representative acted in good faith—i.e. with a reasonable basis for his assessments and interactions with the Miezejewskis' attorney—throughout "the entire management of the claim." Both of Infinity's pre-litigation settlement offers were within its representative's initial valuation of the UIM claim. In conveying the offers, the representative emphasized that they were not final. He told the Miezejewskis' attorney that a higher offer would "require some additional discovery" concerning Miezejewski's pre-accident medical history and additional information about her termination. Notably, after the close of discovery in this lawsuit, which included a deposition of the executive who made the termination decision, Infinity tendered to the Miezejewskis the $15,000 policy limit they initially sought.

At every turn, Infinity's claim representative acted reasonably in light of the evidence, both presented and inexplicably withheld. There is no evidence whatsoever that Infinity's handling of the claim was motivated by "self-interest or ill will." The Miezejewskis accordingly fail to demonstrate Infinity's bad faith by clear and convincing evidence.[31]

In the matter at hand, State Farm's claim examiner based the claim denial on sufficient evidence to find that it was not responsible for Ms. Long's UIM claim. Correspondingly, I find that State Farm had a reasonable basis for denying the UIM claim.

---

[31] *Miezejewski v. Infinity Auto Ins. Co.*, 609 F. App'x 69, 72–73 (3d Cir. 2015) (unpublished).

## III. CONCLUSION

Because it seems evident that State Farm had a reasonable basis for denying Ms. Long's UIM claim and that she would not be able to prove at time of trial by clear and convincing evidence otherwise, State Farm's motion for partial summary judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge